# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CEASAR SAVAGE | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. CCB-08-3200 |
| MAYOR AND CITY COUNCIL OF | : | |
| SALISBURY, MARYLAND, *et al.* | : | |

...o0o...

## MEMORANDUM

Now pending before the court is a motion for summary judgment filed by the Mayor and City Council of Salisbury, Maryland ("City defendants"), the Salisbury Police Department, and nine Salisbury police officers[1] ("officer defendants") (collectively "defendants") against the plaintiff, Ceasar Savage ("Mr. Savage").[2] The issues in this case have been fully briefed and no hearing is necessary. For the reasons stated below, the defendants' motion will be granted in part and denied in part.

## BACKGROUND

On December 2, 2008, Mr. Savage filed a complaint in this court alleging violations of his federal constitutional rights under 42 U.S.C. § 1983, the Maryland Declaration of Rights, and various common law causes of action. The defendants filed a motion to dismiss, which the court granted in part and denied in part on April 27, 2009.[3] Pursuant to the April 27 Order, Mr. Savage's claims were bifurcated, such that claims against the officers in their individual capacities would be

---

[1] The police officers are David Underwood, Kenneth Wilson, Tanya Ehrisman, Brian Whitman, James Russell, and officers Rodriquez, Purnell, Devoe, and Crocket, for whom no first names are provided in the record.

[2] Mr. Savage also filed a motion for summary judgment which rested upon two arguments: (1) the defendants' failure to timely file their responsive pleading; and (2) the preclusive effect of collateral estoppel. On September 2, 2009, the court denied the motion to the extent it sought to impose liability based on the defendants' late filing of their answer. The court will address the remaining basis for Mr. Savage's motion, collateral estoppel, below.

[3] The court's earlier opinion is incorporated by reference.

resolved before claims against the City defendants. Accordingly, the claims currently before the court concern the officers in their individual capacities and consist of federal constitutional claims (Count I) and state law claims with respect to the December 6, 2007 incident: false arrest (Count II(a)[4]); false imprisonment (Count II(b)); abuse of process (Count III); assault (Count IV); battery (Count V); violation of Article 24 of the Maryland Declaration of Rights (Count VI) and; intentional infliction of emotional distress ("IIED") (Count VII). As it appears to the court, Mr. Savage's federal constitutional claims consist of claims for unreasonable search and seizure, which include a false arrest claim, and excessive force,[5] all in violation of the Fourth and Fourteenth Amendments. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that excessive force claims arising from arrests or investigatory stops of free citizens must be analyzed under the Fourth Amendment's reasonableness analysis); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (recognizing that the common law claim of false arrest or imprisonment is analogous to an unreasonable seizure claim under the Fourth Amendment, whereby the plaintiff alleges that his arrest was not supported by probable cause).

As discussed in the April 27, 2009 Memorandum, this lawsuit stems from incidents on January 24, 2007 and December 6, 2007, in which Salisbury police officers detained, searched, and arrested Mr. Savage. On January 24, 2007, Mr. Savage claims he was approached by officers Underwood and Wilson while installing electronic equipment in a white automobile in the driveway of his mother's house in Newton Terrace. According to officer Wilson, a confidential informant had

---

[4] As the complaint inadvertently includes two Count II headings, the court will refer to the counts as Count II(a) and Count II(b).

[5] Although Mr. Savage does not explicitly mention excessive force in Count I of his complaint, he asserts that the defendants deprived him of his Fourth Amendment right against unreasonable search and seizure. (*See* Compl. ¶ 25(a).) In addition, he incorporates into Count I his preceding factual allegations describing how the officers physically assaulted him. (*See id.* at ¶ 22 (repeating paragraphs 1-21).) These factual allegations also form the basis of Mr. Savage's assault and battery claims under state law. Therefore, the court will assume Mr. Savage intends to pursue an excessive force claim as part of his § 1983 action.

advised the Salisbury Vice Narcotics Unit that Mr. Savage was sitting in a white vehicle on Newton Terrace selling crack cocaine. Mr. Savage claims the officers informed him that they were investigating a breaking and entering and asked him for identification and vehicle registration. Mr. Savage explained that he had not been driving the car and thus did not have these documents at hand. According to Mr. Savage, the officers ordered him out of the vehicle, searched and handcuffed him, and then searched the vehicle without permission. Mr. Savage contends that officer Underwood did not find any drugs in the vehicle. Officer Underwood claims that he did not search the car until later in the encounter, once Mr. Savage was under arrest, and that the search uncovered a bag of crack cocaine. Mr. Savage overheard a radio call in which the police dispatcher informed the officers that he had no outstanding warrants.

At some point in the encounter, the officers accused Mr. Savage of trespassing. Mr. Savage explained that his mother lived in the house and officer Underwood approached the house to confirm Mr. Savage's identity. Mr. Savage's mother could not make out the identity of the man in the car, but informed officer Underwood that Mr. Savage was her stepson, although she was not aware that he was currently on her property. The officers decided to detain Mr. Savage until they could confirm his identity and the reason for his presence on the property. At that point, the encounter between Mr. Savage and the officers turned violent, although it is disputed who initiated the fighting. Officer Underwood claimed at a May 4, 2007 hearing that Mr. Savage began to fight the officers and was only restrained with the help of officers Ehrisman, Whitman, Yankalunas, and Mosier. (*See* Def.'s Summ. J. Mot. Ex. 5 at 6.) Mr. Savage maintains that officer Wilson struck him first and was soon joined by officers Ehrisman, Whitman, and Russell who all participated in beating and kicking him. According to Mr. Savage, he awoke in the hospital, where officer Underwood inserted his fingers into his rectum to search for drugs. After finding no drugs, the

officers informed the hospital personnel that Mr. Savage had swallowed a large amount of crack cocaine. At Mr. Savage's request, the hospital ran a urinalysis which came back negative. Mr. Savage returned home from the hospital the following day and was placed on bail. When Mr. Savage went to court on February 2 or 3, 2007, he was arrested for a parole violation because of the charges against him relating to the January 24, 2007 arrest. Mr. Savage then remained in jail until March 23, 2007, when the Circuit Court for Wicomico County ordered him released and reinstated his parole.

During a May 4, 2007 hearing, the Circuit Court concluded that the officers who detained Mr. Savage on January 24, 2007 lacked a reasonable articulable suspicion for doing so and thus suppressed the crack cocaine allegedly recovered during the automobile search. (*See* Def.'s Summ. J. Mot. Ex. 5 at 47.) Nevertheless, the court held that the officers had sufficient probable cause to arrest Mr. Savage because he had assaulted the officers. (*See id.*) Therefore, the case went to trial before a jury on the assault charges. On May 8, 2007, the jury acquitted Mr. Savage of all charges.

Mr. Savage's next encounter with the police occurred on December 6, 2007, when officer Russell noticed Mr. Savage in the yard behind his mother's house and detained him based upon his suspicion that Mr. Savage was trespassing. Officer Russell then called officer Wilson over to the scene. The parties dispute the extent to which officer Russell attempted to ascertain Mr. Savage's identity and relationship with one of the occupants of the house. At some point, officer Russell detected the smell of marijuana on Mr. Savage. Officer Russell then placed Mr. Savage under arrest and searched Mr. Savage's pockets. While they were still outside on the street, Officer Russell lowered Mr. Savage's pants and underwear to search for drugs. Mr. Savage claims that officer Wilson inserted his fingers into his rectum as part of this search. After officer Russell found a plastic bag containing 1.5 grams of marijuana inside Mr. Savage's underwear, he claims Mr. Savage

began "throwing himself around, kicking and flailing, initially trying to run away and stick his hands into his underwear to where" officer Russell had observed the drugs. (Def.'s Summ. J. Mot. Ex. 9 at 8.) Officers Rodriquez, Purnell, Underwood, Crockett, and Devoe then arrived on the scene and assisted officers Russell and Wilson in restraining and searching Mr. Savage. Officer Russell recovered the bag of marijuana, in addition to a plastic bag containing 21 individually wrapped plastic pieces of crack cocaine, weighing 13.8 grams total. Mr. Savage maintains that officers Russell, Wilson, and Underwood beat him up and planted the drugs on him. According to Mr. Savage, officers Rodriquez and Purnell stood by and expressed their disapproval to the other officers. Mr. Savage does not mention what role, if any, officers Crockett and Devoe played in the alleged assault. Officer Russell claims that Mr. Savage instigated the violence by assaulting the police officers. Mr. Savage was briefly hospitalized for his injuries and subsequently charged with drug possession, assault, and resisting arrest.

On January 3, 2008, the District Court of Maryland for Wicomico County held a preliminary hearing on the December 6, 2007 arrest. The judge determined that there was probable cause for the charges to advance to trial. (*See* Def.'s Summ. J. Mot. Ex. 9 at 28.) The Circuit Court for Wicomico County held a hearing on April 18, 2008[6] in which it granted Mr. Savage's motion to suppress the marijuana and crack cocaine. (*See* Def.'s Summ. J. Mot. Ex. 10 at 45.) Although the basis of the ruling is unclear, the judge determined that officer Russell arrested Mr. Savage because of the suspected trespass, not the marijuana odor. (*See id.* at 44.) Therefore, it seems the judge suppressed the evidence because he found the officers lacked the probable cause to arrest Mr. Savage for the suspected trespass.

---

[6] The defendants sometimes refer to this hearing as having occurred on April 10, 2008 (*see* Def.'s Summ. J. Mot. at 30) or on April 11, 2008 (*see id.* at Index of Exs.) Because the transcript of the hearing lists the date as "April 18, 2008," the court will presume that April 18 is the correct date of the hearing. (*See id.* Ex. 10 at 1.)

The defendants now move for summary judgment. They argue that the state court's findings with respect to reasonable articulable suspicion and probable cause for both incidents do not collaterally estop the defendants from asserting that the detentions, searches, and arrests were supported by reasonable suspicion and/or probable cause. To the contrary, they contend that Mr. Savage's claims must fail because the February 12, 2007 indictment, for the charges relating to the January 24, 2007 arrest, and the state court's January 3, 2008 finding of probable cause, with respect to the December 6, 2007 incident, establish reasonable suspicion and/or probable cause for the detentions, searches, and arrests as a matter of law. In the alternative, the defendants claim they are entitled to qualified immunity under federal law. In addition, the defendants assert that officers Devoe, Rodriguez, Purnell, and Crockett are entitled to summary judgment because there is insufficient evidence of wrongdoing on their part. The defendants, however, do not seek summary judgment as to officers Russell, Wilson, or Underwood for the December 6, 2007 incident. Finally, the defendants argue that Mr. Savage lacks evidence in support of his claims for abuse of process (Count III) and IIED (Count VII). Each issue will be addressed in turn.

## **ANALYSIS**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### A. Collateral Estoppel

Mr. Savage claims that the defendants are collaterally estopped from asserting that the detentions, searches, and arrests on January 24, 2007 and December 6, 2007 were supported by reasonable suspicion and/or probable cause because of the state court's determinations that the officers' conduct was not supported by reasonable suspicion and/or probable cause at the May 4, 2007 and April 18, 2008 suppression hearings. The doctrine of collateral estoppel, or issue preclusion, prevents parties from repeatedly litigating factual issues that have already been decided. *See McHan v. C.I.R.*, 558 F.3d 326, 331 (4th Cir. 2009). Full faith and credit requires "federal courts to give the same preclusive effect to state court judgments that those judgments would be

given in the courts of the State from which the judgments emerged." *Baker v. General Motors Corp.*, 522 U.S. 222, 246 (1998) (internal quotation marks omitted). Under Maryland law, collateral estoppel may only be asserted against a party to an initial proceeding in which the issue was "actually litigated and was essential to a valid and final judgment." *Rourke v. Amchem Prods.*, 863 A.2d 926, 933 (Md. 2004). As the Maryland Court of Appeals has stated, "[u]nder no branch of collateral estoppel would an existing judgment have preclusive effect against a person who was not a party, or in privity with a party, in the action leading to the judgment." *Id.* at 933 n.5.

None of the defendant police officers was a party to the criminal litigation against Mr. Savage. Although officer Underwood testified at the May 4, 2007 hearing and officer Russell testified at the April 18, 2008 hearing, their involvement as witnesses in these proceedings does not indicate that they were in privity with the State of Maryland. Consequently, Mr. Savage may not offensively assert collateral estoppel against the officers to bar redetermination of the reasonable suspicion and probable cause issues.[7] *See e.g., Hardesty v. Hamburg Tp.*, 461 F.3d 646, 651 (6th Cir. 2006) (holding under Michigan law that "police officer defendants in a § 1983 case are not in privity with the prosecution of a related criminal case and do not have a personal stake in the outcome of the criminal case"); *McCoy v. Hernandez,* 203 F.3d 371, 375 (5th Cir. 2000) (noting the agreement among the federal circuit courts that "a § 1983 plaintiff may not invoke the doctrine of collateral estoppel against officers following a favorable ruling in a prior criminal proceeding" even where the officers testified at that proceeding as witnesses).

---

[7] Because the court finds collateral estoppel does not preclude the defendants from litigating the legality of the detentions, searches, and arrests, Mr. Savage's motion for summary judgment will be denied.

*B. February 12, 2007 Indictment and April 10, 2008 Preliminary Hearing*

The defendants argue that Mr. Savage's claims must fail because the February 12, 2007 indictment, for the charges relating to the January 24, 2007 arrest, and the state court's January 3, 2008[8] finding of probable cause, with respect to the December 6, 2007 incident, establish reasonable suspicion and/or probable cause for the detentions, searches, and arrests as a matter of law. According to the defendants, the grand jury's indictment and the state court judge's probable cause finding insulate the officers from § 1983 liability because they were the result of an intermediary's independent decision. This argument would carry weight if Mr. Savage claimed the officers violated his constitutional rights by assisting with his prosecution or by executing an arrest warrant issued by a judge. *See e.g.*, *Rhodes v. Smithers*, 939 F. Supp. 1256, 1274 (S.D. W.Va. 1995) (noting that "where an officer presents all relevant probable cause evidence to an intermediary, such as a prosecutor, a grand jury, or a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause for an arrest or prosecution") (citing cases from various circuits holding the same in the context of claims involving prosecution or arrest pursuant to a warrant). Yet Mr. Savage does not contend that his prosecution was wrongful; he focuses only on the officers' initial decision to search, arrest, and imprison him. Accordingly, the fact that a judge and grand jury believed the charges against Mr. Savage were supported by sufficient probable cause to advance to trial does not insulate the officers from liability for their

---

[8] The defendants reference the April 18, 2008 hearing in their memorandum, yet the state court determined that the charges against Mr. Savage were supported by sufficient probable cause to advance to trial at the January 3, 2008 hearing. (*See* Def.'s Summ. J. Mot. Ex. 9 at 28.) Therefore, the court will presume the defendants intended to refer to the January 3, 2008 hearing.

independent decisions to search, arrest, and imprison Mr. Savage.[9] *See e.g., Searles v. Pompilio*, 652 F. Supp. 2d 432, 436, 440 (S.D.N.Y. 2009) (denying defendants' motion for summary judgment on § 1983 claim for false arrest despite the fact that the criminal charges against the plaintiff proceeded to trial). The February 12, 2007 indictment and January 3, 2008 finding of probable cause are relevant, however, with respect to limiting the officers' potential liability to the period between the arrests and the findings of probable cause. *See Brooks*, 85 F.3d at 181-82 (noting false arrest claims allow for "the recovery of damages from the time of detention up until issuance of process or arraignment, but not more") (internal quotation marks omitted).

   *C. Qualified Immunity*

   The defendants argue that they are entitled to qualified immunity with respect to the § 1983 claims. "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) (internal quotation marks omitted). Courts must ask two questions when deciding whether government officials should be granted qualified immunity: (1) whether the plaintiff demonstrated the violation of a constitutional right; and (2) if a constitutional right has been violated, whether the right was clearly established, "such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *see Pearson v. Callahan*, -- U.S. --, 129 S. Ct. 808, 815-16 (2009). Either question may be addressed first. *See Pearson*, 129 S. Ct. at 818.

---

[9] It should be noted that the court did not analyze the reasonable suspicion and probable cause supporting the stop, search, and arrest during the January 3, 2008 hearing. The court simply concluded that Mr. Savage was "in possession of 21 individually wrapped pieces of crack cocaine and the officer checked the location on their map and it's within 1,000 feet of a school zone. So there is probable cause under each count." (*See* Def.'s Summ. J. Mem. Ex. 9 at 28.)

The defendants bear the burden of establishing qualified immunity. *See Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 332 n.10 (4th Cir. 2009). The officers' qualified immunity argument, however, rests entirely on their assumption that the February 12, 2007 indictment and the state court's January 3, 2008 hearing establish the existence of reasonable suspicion and probable cause with respect to both incidents. (*See* Def.'s Summ. J. Mot. at 39.) Because the court has rejected this argument, the defendants lack any present justification for their assertion of qualified immunity. They have not specifically identified the facts that gave the officers reasonable suspicion and probable cause to stop and arrest Mr. Savage, nor have they explained why their use of force and their search of Mr. Savage, during which they allegedly pulled down his pants in public, were reasonable. *See Graham v. Connor*, 490 U.S. at 394; *Amaechi v. West*, 237 F.3d 356, 363-64 (4th Cir. 2001) (finding that a search performed in public, in which the plaintiff was completely exposed from the waist down, was clearly an unlawful strip search under the Fourth Amendment). Accordingly, the defendants will not be granted qualified immunity at this time.

### D. Liability of Officers Devoe, Rodriquez, Purnell, and Crockett

According to the defendants, officers Devoe, Rodriquez, Purnell, and Crockett are entitled to summary judgment because there is no legally sufficient evidence of wrongdoing on their part. Although officer Wilson stated in his interrogatory answer that these four officers were present during the December 6, 2007 arrest, Mr. Savage has not accused these officers of any wrongdoing. (*See* Def.'s Summ. J. Mot. Ex. 2 at 10-11.) To the contrary, Mr. Savage claims that officers Rodriquez and Purnell actually told the other officers that what they were doing was wrong. (*See* Pl.'s Opp. Ex. A at 26-27.) Mr. Savage does not mention officers Devoe or Crockett in his

11

descriptions of either the January 24 or December 6 incidents. Therefore, the court will grant summary judgment in favor of officers Devoe, Rodriquez, Purnell, and Crockett.

*E. Abuse of Process Claim*

To state a claim for abuse of process, Mr. Savage must prove that: (1) "the defendant wilfully used process after it has issued in a manner not contemplated by law"; (2) the defendant "acted to satisfy an ulterior motive"; and (3) "damages resulted from the defendant's perverted use of process." *One Thousand Fleet Ltd Ptship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997). Mr. Savage has not explained or included any evidence as to how the officers used process after it was issued for an illegitimate purpose. Nor has Mr. Savage responded to the defendants' arguments in their motion for summary judgment. As an abuse of process claim requires more than "bad motive alone," this claim must fail. *See id.*

*F. IIED*

The Maryland Court of Special Appeals has noted that "[t]he tort of intentional infliction of emotional distress is rarely viable, and is 'to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.'" *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. Ct. Spec. App. 1995) (quoting *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992). To state a claim for IIED, Mr. Savage must demonstrate that: (1) the defendants' conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is a causal connection between the conduct and the emotional distress; and (3) the emotional distress is severe. *See Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). The third element requires a showing of a "severely disabling emotional response." *Id.* at 616. None of the evidence presented

by Mr. Savage demonstrates this high level of emotional distress. Therefore, Mr. Savage's claim for IIED will be denied.

## **CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment will be granted in part and denied in part. The remaining claims are: (1) § 1983 claims for unreasonable search and seizure, including false arrest, and excessive force against (a) officers Underwood, Wilson, Ehrisman, Whitman, and Russell for the January 24, 2007 incident, and (b) officers Wilson, Russell, and Underwood for the December 6, 2007 incident; and (2) state law claims for false arrest, false imprisonment, assault, battery, and violation of Article 24 of the Maryland Declaration of Rights, all with respect to the December 6, 2007 incident, and asserted only against officers Wilson, Russell, and Underwood. A separate Order follows.

July 30, 2010　　　　　　　　　　　　　　　　　　　　　/s/
Date　　　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge